UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 17-360-DCR |
| V. | ) ) | |
| RYAN TAYLOR, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This action presents the question of whether State Farm Fire and Casualty Company ("State Farm") has a duty under its homeowner's insurance policy with Defendant Alex Lincoln Carpenter to defend or indemnify Carpenter regarding bodily injury claims asserted against him by Defendant Ryan Taylor. [*See* Record No. 1.] State Farm has moved for a declaratory judgment that it is under no such duty, and Taylor has moved for a declaratory judgment that it is. [Record Nos. 22, 25] For the reasons that follow, State Farm's motion will be granted, and Taylor's motion will be denied.

**I.**

The incident giving rise to this action took place outside of Rosebud's Bar and Silk's Lounge around 2:55 a.m. on Sunday, November 9, 2014. [Record Nos. 22-4, p. 1; 25-2, p. 12] The bars had just closed for the night, and a group of patrons remained, milling about in the street. [Record No. 25-2, pp. 12, 19-21, 26] According to Carpenter, he and William James were looking for a group of friends when they were approached by Wade Fisher. [*Id.* at 20-21] Fisher, Carpenter's former co-worker, and James, Carpenter's friend, had developed an

interest in the same woman during the evening. [*Id.* at 16-17] The woman apparently showed more interest in James than Fisher, creating some animosity. [*Id.* at 18-19]

Fisher accused James of stealing a cell phone.[1] [*Id.* at 21, 42-43] Carpenter believes this was a "made up cell phone that didn't exist" and Fisher "was just fishing for a fight completely at that point" because James "was going to take his pretty little blond home." [*Id.* at 21-22, 43] Carpenter knew Fisher to be aggressive from past interactions so he allegedly attempted to deescalate the situation by taking James to the other side of the street. [*See id.* at 22-23.] But Fisher followed James and Carpenter across the street. When Carpenter tried to intervene again, Fisher pushed him "aggressively in the chest" to get him out of the way. [*Id.* at 25-26] Carpenter "kind of fell back" into the street, and had to catch his balance. [*Id.* at 26] When he gathered himself and "re-approached the situation," he found Fisher and three others surrounding James in a corner against a wall and a few trash cans. [*Id.* at 26-28]

According to Carpenter, one of the men (who turned out to be Ryan Taylor) had his hands around James' shoulders. [*Id.* at 27-28] Carpenter believed that James' safety was being threatened, "thought within a split second," and decided to "hit the guy that had his hands around [James'] shoulders." [*Id.* at 28-29] He swung at Taylor from a couple of feet away, "trying to punch him." [*Id.* at 29, 44] Without a particular target in mind, Carpenter aimed generally for Taylor's head, realizing that if he hit Taylor in the head it might hurt him. [*Id.* at

---

[1] There is some indication in the parties' briefs that Taylor testified that Fisher either accused James of stealing the woman's cell phone or her purse. [Record Nos. 22-1, p. 2; 25-2, pp. 42-23] However, the parties have not provided the portion of Taylor's deposition that would support this claim. [*See* Record No. 22-2.] In any event, the precise genesis of the dispute is not important to the question presented in this action.

30] The blow landed on Taylor's jaw and sent him stumbling into the trash cans. [*Id.* at 29-30]

A nearby police officer broke up the fight, handcuffed Carpenter, and sat him on the ground. [*Id.* at 30] Carpenter was charged with second degree assault. [Record No. 22-5] He later pleaded guilty under *North Carolina v. Alford*, 400 U.S. 25 (1970), to fourth degree assault. [Record No. 22-6] He served a sentence of two years' probation, and paid approximately $600 to $800 in restitution. [Record No. 25-2, pp. 40-41]

Shortly after Carpenter entered his *Alford* plea, Taylor filed a civil action in the Fayette Circuit Court alleging that Carpenter committed the tort of assault. [Record No. 22-7] Carpenter was insured on the date of loss under a homeowner's policy with State Farm that, in part, provided liability coverage. [*See* Record No. 22-1, p. 6.] State Farm hired counsel to defend Carpenter in the civil action under a reservation of rights, and filed this separate action seeking a declaratory judgment that it is under no duty to defend or indemnify Carpenter against Taylor's claims. [*See id.*] State Farm and Taylor's cross-motions for declaratory judgment are now ripe for consideration.[2] [Record Nos. 22, 25]

## II.

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). But this provision "does not provide for its own subject matter jurisdiction; the plaintiff must establish that the district court

---

[2] State Farm filed its motion for declaratory judgment on June 11, 2018. [Record No. 22] Taylor timely filed a response and alternatively sought a declaratory judgment in his favor. [Record No. 25] State Farm timely filed a reply to Taylor's response. [Record No. 26] But it did not file a response to Taylor's motion within the time provided by Local Rule 7.1(c).

has either diversity jurisdiction or federal question jurisdiction before the Court will entertain a declaratory action." *Brotherhood Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp. 2d 689, 691 (E.D. Ky. 2002). In the present case, the plaintiff has alleged that the defendants are all Kentucky citizens, the plaintiff is an Illinois citizen, and the amount in controversy exceeds $75,000, exclusive of interest and costs. [Record No. 1] Accordingly, there is diversity jurisdiction to resolve this action under 28 U.S.C. § 1332(a).

"Once the Court has determined that subject matter jurisdiction exists, it must evaluate whether this case is appropriate for declaratory judgment pursuant to the Declaratory Judgment Act." *Brotherhood*, 200 F. Supp. 2d at 692. The Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co*, 515 U.S. 277, 288 (1995). Thus, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* at 282.

> In deciding whether a case is appropriate for declaratory judgment, the principal criteria are (1) whether the judgment would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Am. Home Assurance Co. v. Evans*, 791 F.2d 61, 64 (6th Cir. 1986) (citing *Grand Trunk W. R.R. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

Here, issuing a declaratory judgment would settle the controversy, would serve a useful purpose in clarifying the legal relations at issue, and would not improperly encroach on state jurisdiction. It does not appear that a declaratory judgment is being sought for an improper

purpose. And it does not appear that there is an alternative remedy that would be better or more effective. Accordingly, this is an appropriate case for declaratory judgment.

In a diversity action such as this one, the Court applies "the substantive law of the forum state and federal procedural law." *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014). *See also Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000); Fed. R. Civ. P. 57. Accordingly, the parties' motions will be evaluated under Kentucky substantive law and the Federal Rules of Civil Procedure.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### III.

The personal liability provisions of Carpenter's homeowner's insurance policy provide:

> [i]f a claim is made or a suit is brought against [Carpenter] for damages because of **bodily injury** . . . caused by an **occurrence**, [State Farm] will:
>
> 1. pay up to [its] limit of liability for the damages for which [Carpenter] is legally liable; and
>
> 2. provide a defense at [its] expense by counsel of [its] choice.

[Record No. 25-3, p. 3]

The policy defines an "occurrence" triggering this coverage as "an accident, including exposure to conditions, which first results in . . . **bodily injury** . . . during the policy period." [*Id.* at 5] The policy also contains an exclusion stating that personal liability coverage does not extend to a bodily injury "(1) which is either expected or intended by [Carpenter]; or (2) which is the result of willful and malicious acts of [Carpenter]." [*Id.* at 4]

State Farm argues that it is not required to indemnify or defend Carpenter under this policy for two reasons. First, punching Taylor in the head was not an "accident." Therefore, it was not an "occurrence" triggering the policy's personal liability coverage. [Record No. 22-1, pp. 8-10] Second, the injuries that resulted from the punch are bodily injuries that Carpenter "either expected or intended." As a result, they fall within the intentional acts exclusion to the policy's personal liability provisions. [*Id.* at 10-15]

Taylor responds that the incident can fairly be regarded as an "accident" because Carpenter found himself in an unexpected situation arising from the actions of others and acted instinctively in a split-second defense of his friend. [Record No. 25-1, pp. 6-13] He also argues that this incident did not involve bodily injuries that Carpenter "expected or intended" because Carpenter could not say at his deposition exactly what he aimed for, and disputed that his punch could have caused the extensive injuries Taylor claims. [*Id.*] In Taylor's view, these issues at least create a factual dispute precluding summary judgment in Carpenter's favor. [*Id.*]

**IV.**

The Supreme Court of Kentucky has stated that where, as here, a policy does not define the term "accident," that term must be given its plain meaning. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 74 (Ky. 2010). "Inherent in the plain meaning of 'accident' is the doctrine of fortuity." *Id.* There are two central aspects to the doctrine of fortuity: intent

and control. *Id.* "[O]ne cannot intend to commit an accident because an accident is an event that takes place without one's foresight or expectation." *Id.* at 76 (quotation marks and citation omitted). And an accident must be "beyond the power of any human being to bring to pass, or . . . within the control of third persons." *Id.* (quotation marks and citation omitted; alterations adopted and added). "If the insured did not intend the event or result to occur, and the event or result that occurred was a chance event beyond the control of the insured, then [the coverage] will apply to the benefit of the insured." *Martin/Elias Props., LLC v. Acuity*, 544 S.W.3d 639, 642-43 (Ky. 2018). But "[w]here either intent or control is present, the event is not an accident." *Liberty Mut. Fire Ins. Co. v. Harris*, 3:10-cv-582, 2011 WL 1157745, at *4 (W.D. Ky. Mar. 28, 2011), *aff'd* 513 F. App'x 563 (6th Cir. 2013).

Carpenter testified that he swung at Taylor's head from a couple of feet away, "trying to punch him." [Record No. 25-2, pp. 29, 44] Although he did not have a particular target in mind, he aimed generally for Taylor's head, realizing that if he hit Taylor in the head it might hurt him. [*Id.* at 30] This is not the type of accidental event "that takes place without one's foresight or expectation." *See Cincinnati Ins. Co.*, 306 S.W.3d at 74. Instead, Carpenter "intend[ed] the event or result to occur." *Martin/Elias Props.*, 544 S.W.3d at 643. The fact that he may not have anticipated the extent of Taylor's injuries does not transform the punch into a fortuitous event that Carpenter did not intend.

Nor was this incident "beyond the power of any human being to bring to pass, or . . . within the control of third persons." *Cincinnati Ins. Co.*, 306 S.W.3d at 74. Carpenter may have found himself in an "evolving and unexpected situation" when Fisher confronted James. [Record No. 25-1, p. 8] But Carpenter's lack of control over the situation generally did not deprive him of control over whether to punch Taylor in the jaw. There is no indication that

Carpenter "lost control of his own body" when he punched Taylor. *Liberty Mut. Fire Ins. Co.*, 2011 WL 1157745, at *4, *aff'd* 513 F. App'x at 565-66. And the punch, not the situation generally, is the event giving rise to Taylor's tort claim.

The Court agrees with its sister court in the Western District of Kentucky that it is "clear from a policy interpretation and common sense viewpoint" that, usually, "a fight is not an accident." *Liberty Mut. Fire Ins. Co.*, 2011 WL 1157745, at *4. This case is no exception. Under the undisputed facts of this case, Carpenter possessed both the intent and control to bring about the event giving rise to Taylor's tort claim. Accordingly, that event was not an "accident," and State Farm is not required to indemnify or defend Carpenter against Taylor's claim.³

V.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. State Farm's motion for declaratory judgment [Record No. 22] is **GRANTED**.

2. Taylor's motion for declaratory judgment [Record No. 25] is **DENIED**.

3. A separate Judgment will be entered this date.

This 26th day of July, 2018.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

---

³ Because "a court need not consider the applicability of an exclusion if there is no initial grant of coverage under the policy," *Cincinnati Ins. Co.*, 306 S.W.3d at 78, n. 35, it is unnecessary to consider whether this incident also falls within the policy exclusion for bodily injury that Carpenter "expected or intended." [Record No. 22-1, pp. 10-15]